Joanna R. WAJDA, for herself and all others similarly situated

v.

The PENN MUTUAL LIFE INSURANCE COMPANY.

Civ. A. No. 76–2516.

United States District Court,
E. D. Pennsylvania.

Nov. 3, 1978.

William H. Brown, III, Nicholas N. Price, Philadelphia, Pa., for plaintiffs.

Matthew J. Broderick, Jerome A. Hoffman, Melvin A. Schwarz, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Joanna R. Wajda, an employee of The Penn Mutual Life Insurance Company, filed this complaint on August 10, 1976. Wajda

alleges that many of Penn Mutual's employment policies and practices discriminate against women, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–16 (1976). On behalf of herself and all others similarly situated, Wajda seeks broad declaratory and injunctive relief, including the implementation of an affirmative action plan, and an award of back pay. After conducting extensive discovery, Wajda moved on May 19, 1978 for class action certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure. Penn Mutual vigorously opposes this motion, and both sides have filed lengthy briefs on the propriety of class certification. For the reasons set out in this opinion, I conclude that Wajda's motion should be granted.

The factual record presently before me consists of the pleadings, answers to interrogatories, and the depositions of the following persons employed at Penn Mutual: Daniel E. Dawley, second vice-president for personnel (188 pp.); Richard F. Yoder, treasurer (155 pp.); Carol Page Burns, manager of employment (222 pp.); Jay L. Tum Suden, assistant treasurer (125 pp.); Ralph F. Miller, vice-president for corporate loans (160 pp.); Edwin W. Crysler, Jr., second vice-president for securities investments (81 pp.); Robert Lynch, senior vice-president for administration (210 pp.); William H. Loesche, Jr., financial vice-president (174 pp.); and Joanna R. Wajda, the plaintiff, (505 pp.). Plaintiff also sets forth, in her brief, the results of a statistical analysis of personnel records produced to her by Penn Mutual. In my view, however, the proffered analysis has little or no bearing on the question of class certification, and I shall not refer to it herein. The complaint, taken together with the depositions just referred to, provides a sufficient basis for determining whether Wajda has satisfied the requirements of Rule 23. *See, e. g., Developments in the Law—Class Actions,* 89 Harv. L.Rev. 1318, 1422 n.175 (1976) ("a decision on the basis of the pleadings is proper") (collecting authorities).

Wajda has worked at Penn Mutual's home office in Philadelphia for nearly forty years. She was hired as a file clerk on January 31, 1940, shortly after completing the commercial course at Frankford High School. Early in 1941, she became a secretary to the farm loan supervisor in Penn Mutual's Mortgage Department. In June of 1942, she became a farm real estate clerk. In December of 1945, she became a secretary to John A. Mayer, who was then an assistant to the president of Penn Mutual, and she served as secretary to two other officers of the company between 1949 and 1952. During this period, she also took evening courses at the Wharton School of the University of Pennsylvania, and she received a certificate of proficiency in accounting and finance in 1952.

In June or July of 1952, Wajda became an investment assistant in Penn Mutual's Securities Department. The Securities Department was at that time, and is still, "responsible for investment of the Company's assets in public and private securities." Defendant's Memorandum in Opposition (Document No. 40) at 1. Initially, Wajda's principal tasks were to collect financial and statistical data on potential investments for Penn Mutual, and to help prepare reports presenting these data to the company's executive committee. Wajda Dep. 82–3, 89. In approximately 1956, Wajda also began to assist Mr. Baggs in the field of common stocks. Wajda received an associate's degree in business administration from the Wharton School in 1959. Thereafter, although her responsibilities grew, and although she received several salary increases, she retained the title of "investment assistant" up until December of 1973.

On September 11, 1973, Wajda filed a charge of discrimination with the Equal Employment Opportunities Commission. *Id.* 299–300. In the space provided for an explanation of the charge, Wajda wrote in part: "Joanna R. Wajda for many years has been and presently still continues to be discriminated against because of 'sex' and possibly now one might also add 'age' in her employment in the Securities Department of The Penn Mutual Life Insurance Company." Wajda also attached a four-page

statement elaborating on her claim that she had wrongfully been denied various promotional opportunities, including advancement to the position of Investment Officer, within the Securities Department.

In December of 1973, Wajda became an Equities Research Analyst and Trader (an exempt position under the Fair Labor Standards Act, 29 U.S.C. § 213(a)(1) (1976)),[1] and received a salary increase. The EEOC subsequently found reasonable cause to believe that Wajda's charge was meritorious, and, after unsuccessful attempts at conciliation, it issued a right-to-sue letter on July 1, 1976. Wajda then filed this complaint on August 10, 1976. In October of 1977, more than a year later, Wajda became a Securities Analyst in the direct placement section of the Securities Department. In this capacity, she "assists Investment Officers in their investigation and analysis of the appropriateness of long term investment in particular private corporate transactions." Defendant's Memorandum in Opposition (Document No. 40) at 9.

Wajda alleges that Penn Mutual "maintains a pattern and practice of discrimination in employment on the basis of sex." Complaint ¶ 19. The complaint enumerates thirty-four practices and policies that allegedly discriminate against women. In particular, Wajda alleges that Penn Mutual:

"(a) places a higher proportion of male employees in executive, managerial and professional positions than female employees;

.    .    .    .    .

(g) excludes or tends to exclude women from certain jobs and/or positions within the company;

.    .    .    .    .

(i) maintains sex segregated departments;

.    .    .    .    .

(l) pays men and women with equal qualifications unequal salaries;

.    .    .    .    .

(p) pays women employees fewer and lower merit raises and raises for promotions than it pays male employees;

(q) fails to maintain a hiring, promotion and transfer policy based on objective job-related criteria that are uniformly applied to men and women;

(r) fails to have a system of job posting and/or job announcement, thereby virtually excluding women from bidding on open positions because of their lack of knowledge of the openings;

(s) limits job opportunities for women by promoting them primarily to jobs which have traditionally been held by women and by discouraging women from applying for jobs which have been traditionally held by men;

.    .    .    .    .

(u) denies secretaries (who are all of predominatly [sic] female) promotional opportunities into non-secretarial positions;

(v) hires new inexperienced college men into positions with the company without affording the same opportunities to women within the company;

.    .    .    .    .

(dd) refuses to permit women to be employed in the Direct Placement Corporate Loans area [of the Securities Department] where promotions are more rapid and growth potential greater; [and]

(ee) continues to prevent a women [sic] from becoming an officer in the Securities Department[.]"
Complaint ¶ 19.

Several other allegations of the complaint admittedly are derived from the EEOC's letter of determination, issued after an investigation of Wajda's formal charge. Exhibit A to Complaint. Thus, Wajda alleges that she is the only woman ever to attain

---

1. By its terms, the Fair Labor Standards Act excludes from coverage, *inter alia*, any person "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1) (1976). Regulations promulgated by the Secretary of Labor give additional content to these three categories of employees. *See* 29 C.F.R. §§ 541.0 to .315 (1977).

an exempt-status position in Penn Mutual's Securities Department, that certain officers in the Securities Department denied her "the same on-the-job training granted recent college graduates," and that women employees at Penn Mutual are concentrated in non-officer and non-managerial positions. *Id.* ¶ 20(a), (e)–(g).

Interestingly, none of the allegations in the complaint refer to specific female employees other than Wajda, or to specific departments at Penn Mutual other than the Securities Department, where Wajda works.

Wajda seeks here to represent a class consisting of all past, present, and future female [2] employees of Penn Mutual's Philadelphia home office who could have filed timely charges of discrimination with the EEOC on September 11, 1973, the date on which Wajda filed her own charge with the EEOC. Emphasizing that she has alleged pervasive sex discrimination throughout Penn Mutual, Wajda argues that the "across-the-board" approach to Title VII class actions should be followed here. *See generally* 4 Newberg on Class Actions §§ 7980, 7983 (1977). Penn Mutual, for its part, contends that the Supreme Court's unanimous decision in *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), rejected the "across-the-board" approach, and that the Rule 23(a) prerequisites to class certification, read in light of *Rodriguez,* have not been satisfied here.

■ Before addressing the impact of *Rodriguez,* it may be helpful to review briefly the meaning of the "across-the-board" approach. This approach, often traced to *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir. 1969) and *Long v.*

*Sapp,* 502 F.2d 34 (5th Cir. 1974), amounts to a judicial relaxation of the Rule 23(a)(2) and (3) requirements of commonality and typicality in Title VII cases. *E. g., Lamphere v. Brown University,* 71 F.R.D. 641, 645 (D.R.I.1976), *appeal dismissed,* 553 F.2d 714 (1st Cir. 1977). In essence, the courts have held that the question whether the employer discriminated on the basis of race (or sex) against its employees is a question common to all class members, irrespective of factual differences in their individual circumstances, and that this single common question satisfies the requirement of Rule 23(a)(2) that there be "questions of law or fact common to the class." *See, e. g., Senter v. General Motors Corp.,* 532 F.2d 511, 523–24 (6th Cir. 1976); *Black Grievance Comm. v. Philadelphia Elec. Co.,* 79 F.R.D. 98, 107 (E.D.Pa.1978); *Hannigan v. Aydin Corp.,* 76 F.R.D. 502, 507–08 (E.D.Pa.1977) (Lord, Ch. J.); 3B Moore's Federal Practice ¶ 23.06—1 at 23–173 to –176 & n.15 (2d ed. 1948); 7 C. Wright & A. Miller, Federal Practice & Procedure § 1763 at 608–09 (1972). With regard to the typicality requirement of Rule 23(a)(3), the precise content of which has never been clear,[3] the courts have also been lenient with plaintiffs challenging "across-the-board" discrimination. As one commentator puts it:

"These decisions posit that 'typicality' does not require that the plaintiffs shall have suffered every specific act of discrimination of which the class complains . . . . The allegation of a policy of broad based discrimination permits a plaintiff affected by the discriminatory policies and practices to complain on behalf of the entire class against whom such discrimination is directed, and to challenge all forms in which the discrimination appears. The typicality lies in the

---

**2.** Although plaintiff's written submissions do not restrict the proposed class to *female* employees, this omission was inadvertent, and plaintiff's counsel conceded at oral argument that the complaint deals only with discrimination against female employees.

**3.** *See, e. g.,,* 3B Moore's Federal Practice ¶ 23.-06—2 at p. 23–185 (2d ed. 1948) ("there is no need for this clause, since all meanings attrib-

utable to it duplicate requirements prescribed by other provisions in Rule 23") (footnote omitted); 7 C. Wright & A. Miller, Federal Practice & Procedure § 1764 at 611 (1972) ("[t]here is some doubt as to the exact meaning of [Rule 23(a)(3)].") For a good discussion of the typicality requirement, see *Taylor v. Safeway Stores, Inc.,* 524 F.2d 263, 269–70 (10th Cir. 1975).

common thread of discrimination." 4 Newberg on Class Actions § 7983 at 1297 (1977) (footnote omitted).

In short, the "across-the-board" approach considerably reduces the hurdles posed by the commonality and typicality requirements in cases where allegations of pervasive class-based discrimination are present.

Penn Mutual argues here that the *Rodriguez* decision repudiated the "across-the-board" approach. I find this contention unpersuasive, and I believe that a close examination of the *Rodriguez* opinion leaves little room for doubt on this point.

*Rodriguez* began in the district court as an action challenging several related, allegedly discriminatory policies of defendant East Texas Motor Freight System, Inc. Plaintiffs contended that East Texas refused to hire blacks or Mexican-Americans for "line driver" positions, and limited them to lower-paying "city driver" positions. Plaintiffs also alleged that a no-transfer policy and a restrictive seniority policy exacerbated the racially discriminatory effect of East Texas' policy regarding initial hires. 431 U.S. at 397–99 & nn. 1, 3, 97 S.Ct. 1891, 52 L.Ed.2d 453. Although plaintiffs filed a class action complaint, they never moved for class certification, and they "confined their evidence and arguments at trial to their individual claims." *Id.* at 400, 97 S.Ct. at 1895. At the conclusion of the trial, the district judge dismissed the class action allegations of the complaint and ruled against plaintiffs on their individual claims.

On appeal, however, the Fifth Circuit reversed. It "certified a class consisting of all . . . Negro and Mexican-American city drivers covered by the applicable collective-bargaining agreements," and "went on to find classwide liability against the company . . . on the basis of the proof adduced at the trial of the individual claims." *Id.* at 401, 97 S.Ct. at 1896. The Supreme Court later granted the company's petition for certiorari, and reversed, holding that the court of appeals erred in certifying the class. *Id.* 403–06, 97 S.Ct. 1891. At issue here is the precise basis for the Supreme Court's ruling.

The Court's opinion explicitly states that the named plaintiffs "were not members of the class of discriminatees they purported to represent," *id.* at 403, 97 S.Ct. at 1896, and that, in any event, they were not adequate class representatives under Rule 23(a)(4), *id.* at 404–06, 97 S.Ct. 1891. With regard to the former point, the Court cited the district court's finding that the named plaintiffs were unqualified to hold line driver positions, and then went on to conclude that they were not members of *the class described in their complaint, i. e.,* "all Negroes and Mexican-Americans who [were] denied equal employment opportunities with the company because of their race or national origin." *Id.* at 399, 97 S.Ct. at 1894. The balance of the Court's discussion on this point suggests that the named plaintiffs also lacked standing to represent the class. Thus, the Court noted that the named plaintiffs "could have suffered no injury as a result of the alleged discriminatory practices, and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury." *Id.* at 403–04, 97 S.Ct. at 1897. The Court's citation to *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974), where Chief Justice Burger specifically discussed the requirements for "standing to sue as a class representative," also suggests that the *Rodriguez* holding is based in part on the standing doctrine. Finally, the *Rodriguez* opinion goes on to say that, "[a]part from the named plaintiffs' evident lack of class membership," they were also inadequate class representatives under Rule 23(a)(4). *Id.* at 404–06, 97 S.Ct. at 1897.

Given that the "across-the-board" approach is simply a judicial gloss on the commonality and typicality requirements of Rule 23, it is difficult to understand how *Rodriguez,* which involved (1) class membership, (2) standing, and (3) the adequacy requirement of Rule 23, could be taken as a rejection of that approach. Penn Mutual, however, calls attention to the following paragraph from the *Rodriguez* opinion:

"We are not unaware that suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs. Common questions of law or fact are typically present. But careful attention to the requirements of Fed.Rule Civ.Proc. 23 remains nonetheless indispensable. The mere fact that a complaint alleges racial or ethnic discrimination does not in itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination." 431 U.S. at 405–06, 97 S.Ct. at 1898.

Penn Mutual seems to contend that the Court, in admonishing us to pay "careful attention to the requirements" of Rule 23, implicitly disapproved the "across-the-board" approach pioneered by the Fifth Circuit. In my view, *Rodriguez* does not require such an interpretation. *Accord, e. g., Satterwhite v. City of Greenville*, 578 F.2d 987, 993 (5th Cir. 1978) (en banc) ("Nor is *Rodriguez* . . . contrary to the policy favoring 'across the board' Title VII class actions."), *vacating* 557 F.2d 414 (5th Cir. 1977) (panel opinion) (on rehearing). Accordingly, I conclude that the "across-the-board" approach *remains good law.*

■ It does not automatically follow, however, that Wajda may represent the class defined in her written submissions. The "across-the-board" approach does not relieve a district court of its obligation to determine whether certification is appropriate in any particular case. Although the would-be class representative has the burden of persuasion on this question,[4] it will be convenient here to structure the discussion around Penn Mutual's various objections to the proposed class.[5]

■ Initially, Penn Mutual emphasizes that personnel decision-making at its Philadelphia home office is highly decentralized. Each of the twenty-one departments in that office is headed by a manager "who is responsible for determining who will be hired, promoted and the amount of merit raises an employee receives within that department." Defendant's Memorandum of Law (Document No. 40) at 13. Because these critical personnel decisions are made within each department, rather than on a company-wide basis, Penn Mutual argues that no common question of law or fact can exist among all class members, and that Wajda therefore has failed to satisfy the commonality requirement of Rule 23(a)(2).

Wajda, by way of rejoinder, emphasizes that Penn Mutual's Personnel Department figures importantly in a wide range of decisions affecting personnel in all departments. Thus, if a vacancy occurs at Penn Mutual, the supervisors in the particular department may choose to fill that vacancy by promoting an employee currently working in that department. Should they choose not to do so, however, the Personnel Department generally will post a notice of the vacancy, in order to permit interested employees from other departments to apply for the position. Moreover, the Personnel Department initially screens and interviews applicants from other departments, and ultimately recommends that certain applicants be interviewed by the supervisor in the department where the vacancy has occurred. In short, the Personnel Depart-

---

4. *E. g., Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir. 1974); *Hannigan v. Aydin Corp.*, 76 F.R.D. 502, 507 (E.D.Pa.1977); 3B Moore's Federal Practice ¶ 23.02—2 at p. 23–96 & n.35 (2d ed. 1948). *But cf.* 4 Newberg on Class Actions ¶ 7986 at 1327–28 (1977) (arguing that burden-of-proof concepts have very limited application in a motion for certification; the would-be representative need only prove certain "class facts" on which the court must act in ruling on the motion).

5. Penn Mutual, in its brief, repeatedly quotes from a brief filed by Wajda's counsel in *Hauck v. Xerox Corp.*, 78 F.R.D. 375 (E.D.Pa.1978) (Troutman, J.) (on motion for certification). As counsel for defendant Xerox Corporation in that Title VII action, Wajda's counsel opposed class certification on a number of grounds. I fail to see the relevance of that brief to the instant motion. Surely Penn Mutual does not contend that Wajda's counsel, by reason of his brief in the *Hauck* litigation, is now collaterally estopped from advancing legal arguments contrary to the arguments that he (successfully) pressed in *Hauck.*

ment apparently plays a significant role in connection with employee transfers at Penn Mutual.

The Personnel Department performs other functions that are pertinent here. It recruits new employees for the company's college trainee program, and determines their starting salaries. It sets the salary *ranges* for all other persons hired from outside Penn Mutual, although the individual departments to which they are assigned determine their actual salaries. Finally, the Personnel Department establishes at least some general, company-wide employment policies, including policies governing employee evaluations.

On the other hand, the evidence discovered thus far also shows that the individual departments at Penn Mutual are solely responsible for certain other functions, such as on-the-job training and employee counseling. Moreover, certain departments, including the Law Department and the Medical Department, are particularly autonomous, in that they recruit their professional employees with little or no assistance from the Personnel Department.

In light of these essentially uncontested facts, Penn Mutual argues that no question of law or fact can be common to all members of the proposed class. I disagree. As I noted earlier, the "across-the-board" approach posits that, where pervasive class-based discrimination is alleged, the question whether the employer has in fact discriminated against members of the class is a question common to all class members. That common question does not vanish simply because the named plaintiff seeks to represent a class that cuts across departmental lines of authority. *See, e. g., Leisner v. New York Tel. Co.,* 358 F.Supp. 359, 371 (S.D.N.Y.1973) ("[E]ven if different personnel may be responsible for hiring and promotional policies in the various . . . departments and divisions, there is the common question of law and fact whether women situated in the various departments have been discriminated against on the basis of their sex by agents of the Telephone Company."); *Martinez v. Bechtel Corp.,* 11 FEP

Cas. 898, 903 (N.D.Cal.1975); *cf. Hannigan v. Aydin,* 76 F.R.D. 502 (E.D.Pa.1977) (rejecting the argument that "because individual hiring and promotion decisions are [made] by separate and decentralized personnel departments, a Title VII class action is necessarily inappropriate").

True, the reported decisions reveal some judicial reluctance to entrust representation of such a class to named plaintiffs who may be unfamiliar with the activities of corporate departments or divisions other than their own. *See, e. g., Doninger v. Pacific N. W. Bell, Inc.,* 564 F.2d 1304, 1311 (9th Cir. 1977) (the "existence of six separate affirmative action programs with decentralized enforcement leads to the inference . . that different questions of fact or law" would be presented by the claims of members in different establishments); *Hannigan v. Aydin Corp.,* 76 F.R.D. 502, 507–10 (E.D.Pa.1977) (Lord, Ch. J.) (limiting class to exclude employees of other divisions where corporate employer had no personnel department, its various divisions were both autonomous and geographically dispersed, and plaintiff alleged no "specific acts of discrimination" in other divisions). This concern, however, should more properly inform the court's assessment of adequacy of representation under Rule 23(a)(4). *See generally Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964,* 84 Harv.L.Rev. 1109, 1220–21 (1971). It should not lead to a revival of the common-question hurdle in Title VII cases, for the "across-the-board" approach was developed in order to lower that hurdle. The "across-the-board" approach, aimed at facilitating enforcement of Title VII, should not be applied narrowly in cases where the broadest discrimination is alleged to have occurred.

■ I recognize, of course, that certification of such a class may tend to complicate the trial of the class claims. Many of the broad allegations here involve discrimination in hiring and promotion, areas that apparently lie within the control of supervisors in the various departments. Thus, plaintiff's proof of discrimination may re-

quire her to present statistical or other evidence on a department-by-department basis. This undoubtedly would be more cumbersome than the presentation of company-wide statistics. At some point, it might warrant the creation of subclasses, pursuant to Rule 23(c)(4)(B). However, considerations of convenience or "manageability" should not be smuggled into the commonality analysis required by Rule 23(a)(2). Plaintiff need only show that common questions of law or fact are present, and, under the "across-the-board" approach, she has done so. *See* discussion *supra*. She need not allege that the discriminatory policies described in the complaint emanate from Penn Mutual's central management, rather than from the managers of Penn Mutual's twenty-one departments.

■ A related argument merits only brief mention here. Penn Mutual apparently contends that Wajda cannot satisfy the commonality requirement because each department at Penn Mutual applies different criteria in evaluating its employees for promotions or merit increases. Thus:

"The methods of evaluating employees differ from department to department. In a department such as the Actuarial Department, passing objective and standard tests given by outside agencies is crucial. For employees such as security guards, honesty and reliability are key factors. No magic formula links these various promotion decisions. Thus, the question of whether any particular employee . . . has been deprived of advancement for unlawful reasons can only be answered by a case-by-case analysis of an employee's work history and evaluations by particular supervisors." Defendant's Memorandum in Opposition (Document No. 49) at 15 (citation omitted).

Penn Mutual would construe Rule 23(a)(2) to require far more than the presence of common questions. As I understand its position, Penn Mutual would limit class certification to cases where proof of the named plaintiff's claim will "prove each and every element of every class member's claim." *Developments in the Law—Class Actions,* 89 Harv.L.Rev. 1318, 1455 (1976) (footnote omitted). However, this is simply not the thrust of the commonality requirement. *See id.* 1455–56. Denial of class certification for failure to satisfy the commonality requirement is proper only where no questions of law or fact are common to the class. For the reasons stated earlier, this is not such a case.

Penn Mutual also argues that Wajda's own claim of discrimination is unique, and thus not "typical of the claims . . . of the class" under Rule 23(a)(3). Wajda's particular claim focuses on the allegedly discriminatory denial of various promotions and raises that she sought. Some, and perhaps all, of the decisions that directly affected her were made by supervisors in the Securities Department. Penn Mutual urges that her " 'refusal to promote' claims are the type of personal, individualized grievances which are not proper subjects for class representation because they lack commonality and typicality with each purported class claim which is equally personal." Defendant's Memorandum in Opposition (Document No. 40) at 18 (footnote omitted). As I understand it, the argument is that a "refusal to promote" claim by an employee in one department cannot be typical of a "refusal to promote" claim arising in another department, at least where promotion decisions are made by supervisors within each department.

■ This contention is plainly inconsistent with the "across-the-board" approach. Under that approach, as I noted earlier, "[t]he allegation of a policy of broad based discrimination permits a plaintiff affected by the discriminatory policies and practices to complain on behalf of the entire class against whom such discrimination is directed, and to challenge all forms in which the discrimination appears. The typicality lies in the common thread of discrimination." 4 Newberg on Class Actions § 7983 at 1297 (1977) (footnote omitted).

Wajda alleges that Penn Mutual discriminates against female employees in the area

of promotions. Complaint ¶ 19(d), (h), (s), (t), (z), (aa), (hh). Accordingly, it matters not that promotional decisionmaking is decentralized. Although the class members' claims may turn on promotion decisions made by supervisors in twenty-one different departments, Wajda's claim that she was denied promotional opportunities by reason of her sex is nevertheless typical of other class members' "refusal to promote" claims. *Accord, Martinez v. Bechtel Corp.,* 11 FEP Cas. 898, 904 (N.D.Cal.1975). I therefore conclude that Rule 23(a)(3) is satisfied here.

Penn Mutual further contends that Wajda cannot represent a class that includes non-exempt secretarial and clerical employees. This objection has three distinct components: (1) Wajda is a professional employee in an exempt-status position, and therefore lacks membership in the class of non-exempt clerical employees. (2) Wajda's claim and the non-exempt clerical workers' claims have no common questions of law or fact. (3) Wajda is not an adequate representative of non-exempt clerical employees under Rule 23(a)(4). I will discuss these points in turn.

First of all, Penn Mutual's suggestion that a named plaintiff must be a member of each sub-group within the class she seeks to represent is wholly untenable. In support of its position Penn Mutual simply cites the *Rodriguez* decision, which I discussed at length earlier in this opinion. Penn Mutual apparently interprets *Rodriguez*, which affirmed that the named plaintiff must be a member of the *class* she seeks to represent, to require that she also be a member of each and every sub-group *within* that class. This view of *Rodriguez* would effectively require that all class members' claims be factually indistinguishable from one another, and from the named plaintiff's individual claim. Such a requirement would, of course, wipe out the "across-the-board" approach, which generally subordinates factual differences among individual claims so long as allegations of pervasive discrimination are present. *See Donaldson v. Pillsbury Co.,* 554 F.2d 825, 831 (8th Cir.

1977) ("When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment.") (citing cases); discussion *supra.* Moreover, nothing in *Rodriguez* even faintly suggests that the Court meant to impose such a requirement. Thus, Wajda need not be a non-exempt clerical employee in order to represent a class that includes such employees.

Penn Mutual also urges that no questions of law or fact are common to Wajda's claim and to the claims of non-exempt clerical employees. As I noted in my earlier discussion of the commonality requirements, however, the question whether Penn Mutual discriminated on the basis of sex against its female employees is plainly common to all class members here, including the non-exempt employees that Penn Mutual would exclude from the class.

Finally, Penn Mutual argues that Wajda cannot adequately represent non-exempt clerical employees. Rule 23(a)(4), which articulates the requirement of adequate representation, requires (1) that plaintiff's attorney be qualified, experienced, and capable of litigating the class claims, and (2) that plaintiff have no interests antagonistic to the interests of other class members. *See, e. g., Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Black Grievance Comm. v. Philadelphia Elec. Co.,* 79 F.R.D. 98, 109 (E.D.Pa. 1978). With respect to the first requirement, Penn Mutual voices no objection, and I am satisfied that Wajda's counsel is capable of pursuing the proposed litigation.

Penn Mutual argues, however, that Wajda herself cannot represent this group of employees. First, it emphasizes the "inherent strain in a supervisory relationship" between an exempt and a non-exempt employee. *Droughn v. FMC Corp.,* 74 F.R.D. 639, 643 (E.D.Pa.1977) (Huyett, J.). Second, Penn Mutual points to Mr. Yoder's testimony that Wajda was involved in more dis-

putes with female non-exempt clerical personnel than was anyone else in the Securities Department. Yoder Dep. 134–36, 138–41. Neither of these considerations persuades me that Wajda's interests in this litigation are antagonistic to the interests of non-exempt clerical employees. To the contrary, the complaint specifically attacks a number of allegedly discriminatory policies that primarily affect non-exempt clerical employees. Moreover, the complaint seeks broad relief that would directly benefit all Penn Mutual's female employees, regardless of their job classifications. Under the circumstances, I cannot say that Wajda is an inadequate representative under Rule 23(a)(4). Should any evidence of such inadequacy materialize at some later stage of these proceedings, I will take appropriate action at that time. For the moment, however, I fail to see what more Wajda could do in order to prove the absence of any antagonistic interests here.

With respect to non-exempt employees, however, plaintiff's counsel stated at oral argument that Wajda seeks to represent only those non-exempt employees who ultimately became, or who aspired to become, exempt employees. Consequently, the class will be defined so as to exclude non-exempt employees who neither became, nor sought to become, exempt employees.

■ Finally, Penn Mutual urges that the class here be limited to exclude *future* female employees. In its own words, "no class can include such an amorphous, undefined group as future female employees." Defendant's Memorandum in Opposition (Document No. 40) at 32 (citations omitted). As I read *Wetzel v. Liberty Mut. Ins. Co.,* *supra,* however, a Title VII class may properly include future employees for the limited purpose of framing affirmative injunctive relief. 508 F.2d at 254; *see Canty v. Philip Morris U.S.A.,* No. 76–3903, slip op. at 2 (E.D.Pa. July 13, 1978) (Fullam, J.). The contrary authority cited by Penn Mutual, including *Moore v. Western Pa. Water Co.,* 73 F.R.D. 450, 453–54 (W.D.Pa.1977), rests in part on the view that future employees could be uniquely harmed if the named plaintiffs are unsuccessful at trial, because the adverse judgment would be res judicata even with respect to the future employees. Thus, one court noted that such a judgment "would bind [future employees] and prevent redress of discrimination not yet inflicted." *Harvey v. Stein Printing Co.,* 9 FEP Cas. 88, 88 (N.D.Ga.1973). This concern seems to me to be unjustified. If an individual hired after the adverse judgment was rendered subsequently experiences unlawful discrimination, I cannot see why his cause of action arising from that discrimination would be barred by the prior adverse judgment against the class. As a result, I find this policy argument against inclusion of future employees in Title VII classes to be unconvincing. Wajda may represent a class that includes future female employees of Penn Mutual's Philadelphia home office.

■ Rule 23(a)(1) also requires that the proposed class be "so numerous that joinder of all members is impracticable." Of course, a court cannot determine whether the numerosity requirement has been satisfied until it evaluates any objections bearing on the proper scope of the class. Here, Wajda contends that the class she seeks to represent contains at least 1,300 members. Plaintiff's Memorandum in Support of Motion (Document No. 26) at 4–5 & n.2. Penn Mutual does not dispute this estimate of class size. A class of this size obviously satisfies the requirement of Rule 23(a)(1). *See, e. g.,* 3B Moore's Federal Practice ¶ 23.-05[1] at pp. 23–154 to –156 & n.24 (2d ed. 1948) (collecting cases).

Inasmuch as Wajda has met the four requirements of Rule 23(a), the question now becomes whether she can also satisfy one of the four subdivisions of Rule 23(b). She seeks to maintain this action under Rule 23(b)(2), and, because I have determined that it may properly be so maintained, I need not consider Rules 23(b)(1)(A), 23(b)(1)(B), or 23(b)(3).

■ Rule 23(b) provides that a class action may be maintained "if the prerequisites of subdivision (a) are satisfied and in addition:

" . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."

Penn Mutual does not contend here, nor could it, that this action does not fit within the scope of subdivision (b)(2). Although Rule 23(b)(2) is certainly not limited to civil rights cases, an action involving alleged class-based discrimination is a paradigm (b)(2) class action. *See Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 250 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Jenkins v. United Gas Corp.*, 400 F.2d 28, 34 (5th Cir. 1968); *Black Grievance Comm. v. Philadelphia Elec. Co.*, 79 F.R.D. 98, 111 (E.D.Pa.1978). *Compare* Advisory Committee's Note to Rule 23(b)(2), 39 F.R.D. 69, 102 (1966) *with* 3B Moore's Federal Practice ¶¶ 23.40, at 23–652 to –653, 23.10–1 (2d ed. 1948). Accordingly, I conclude that this action may be maintained under Rule 23(b)(2).

With respect to the proper cut-off date for class members' claims, Penn Mutual correctly notes, and plaintiff's counsel conceded at oral argument, that Wajda may represent only those female employees who could have filed timely charges with the EEOC on or after November 16, 1972, which was three hundred days before Wajda filed her own complaint on September 11, 1973. *See Wetzel v. Liberty Mut. Ins. Co., supra*, 508 F.2d at 246. *See generally*, 42 U.S.C. § 2000e–5(e) (1976). It would therefore appear that the class should be limited to those female employees of Penn Mutual's Philadelphia home office who could have filed timely charges of sex discrimination with the EEOC on or after November 16, 1972.

Rule 23(c)(1) makes it plain, however, that a certification order "may be altered or amended before the decision on the merits." I repeat, for the sake of emphasis, that two aspects of this litigation may later require some modification of this initial order. First, the diversity of claims among the class members may at some point call for the creation of subclasses, or for the limitation of this action to certain issues. Second, that same diversity of claims may at some point suggest that Wajda cannot adequately represent as broad a class as the one defined here. If that is the case, I will consider appropriate remedial measures, such as requiring that another class member become a representative with respect to some of the class claims. In short, the present disposition of Wajda's motion should not be viewed as an irrevocable step.