Lyndall MOLTHAN, M. D., Bernice Torrance, and Dr. Rosalie A. Cohen, Individually and on behalf of all other persons similarly situated

v.

**TEMPLE UNIVERSITY—OF the COMMONWEALTH SYSTEM OF HIGHER EDUCATION.**

Civ. A. No. 75–1401.

United States District Court, E. D. Pennsylvania.

July 23, 1979.

Gordon Gelfond, Harry Lore, Philadelphia, Pa., for plaintiffs.

Matthew M. Strickler, Philadelphia, Pa., for defendant.

## MEMORANDUM

LUONGO, District Judge.

Plaintiffs Lyndall Molthan, Bernice Torrance, and Rosalie A. Cohen filed the origi-, nal complaint in this civil rights action on May 15, 1975, on behalf of themselves and all others similarly situated. They com-plained of pervasive gender-based discrimination in the employment practices and policies of defendant Temple University. On December 19, 1977, I granted Temple's motion for partial summary judgment on certain of Molthan's individual claims. *See* 442 F.Supp. 448 (E.D.Pa.1977). Plaintiffs filed an amended complaint on April 2, 1979, withdrawing certain claims but once again alleging discrimination against women "in the hiring, promotion, tenure, salary and placement of women employed at or applying for faculty, administrative and professional positions within Temple University." (Document No. 40) ¶ 1. Count I of the amended complaint is based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1976), while Count II is based on the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1976). Presently before me is plaintiffs' motion for class action certification. For the reasons hereafter stated, I conclude that Count I of this action may properly be maintained as a class action under Rule 23(b)(2), but that the scope of the class should be somewhat narrower than the broad class that plaintiffs seek to represent.

The factual record here consists of the pleadings, answers to interrogatories, the depositions of the three named plaintiffs, and a number of documents submitted by both sides. In my view, the pleadings alone provide a sufficient basis for determining whether plaintiffs have satisfied the requirements of Rule 23. *See Wajda v. Penn Mut. Life Ins. Co.,* 80 F.R.D. 303, 305 (E.D. Pa.1978).

The amended complaint alleges the following facts with respect to the three named plaintiffs. Lyndall Molthan graduated with honors from Temple University School of Medicine in 1949, and then became one of the first female interns at Temple University Hospital. Amended Complaint ¶ 21. From the early 1950's through the late 1960's, she was appointed to progressively higher academic positions within the University, "including a dean's appointment as an instructor in the Department of Medicine in 1954; a dean's appoint-

ment as assistant professor in the Department of Medicine in 1959; a dean's appointment as associate professor in the Department of Medicine in 1965; and a presidential appointment as associate professor in the Department of Medicine in 1966." *Id.* ¶ 22. In May of 1969, shortly after she accepted a consulting position at another institution, Molthan was "demoted" to a non-tenured dean's appointment as a clinical associate professor. Although her consulting position required only four hours of service per month, so that she continued to work a full 35-hour week at Temple University Hospital after she accepted the outside position, Molthan was made a "clinical," or part-time, faculty member (thus losing her tenure) "allegedly as a consequence" of accepting that position. *Id.* ¶¶ 26, 28. These actions were taken although male faculty members earning "comparable and more extensive consultancy salaries" were not demoted to non-tenured positions. *Id.* ¶ 27. In July of 1971, Molthan "became a full-time employee . . . with fringe benefits, but without correction of her faculty status, and hence with continued loss of tenure." *Id.* ¶ 29.

Molthan later complained to the University's Affirmative Action Committee that she had been underpaid (compared to male employees in comparable positions) because of sex discrimination. *Id.* ¶ 34. On January 20, 1972, that committee rendered an unfavorable decision. Molthan promptly appealed to the newly-created University Equal Opportunity Employment Council, which held three "extensive hearings" and then rendered a decision in her favor. *Id.* That body then "forwarded its recommendation to the office of [University] President Paul Anderson, who not only reversed the University Equal Opportunity Employment Council, but disbanded it." *Id.* Thus, Molthan's case was "the first and only case ever heard" by the Council. *Id.* Molthan filed complaints in August of 1972 with the Equal Employment Opportunity Commission and with the Pennsylvania Human Relations Commission. *Id.* ¶ 35. Finally, it appears that Molthan's employment at Temple ended in November of 1977, al-

though plaintiffs' counsel have not seen fit to incorporate this occurrence into the factual record.

Bernice Torrance was hired on August 1, 1969 to serve as a producer-director in Temple's Office of Television Services. *Id.* ¶ 38. Although her work was well-received, she was paid less than "males employed in comparable positions" in the same department. *Id.* ¶ 41. On June 7, 1971, she was discharged wrongfully and in derogation of the University's procedures, although her supervisor had never warned her that her work was unsatisfactory and although she had received no outside complaints about her work. *Id.* ¶¶ 42, 43. On July 7, 1972, Torrance filed a complaint with the Equal Employment Opportunity Commission. *Id.* ¶ 45.

Rosalie A. Cohen was hired in the winter of 1970 as an Associate Professor of Sociology and Foundations of Education. *Id.* ¶¶ 47, 49. Under this interdisciplinary appointment, two-thirds of Cohen's duties were within the Sociology Department of the College of Liberal Arts, and one-third were within the Foundations of Education Department of the College of Education. *Id.* ¶¶ 49, 51. Dr. David Berger became Chairman of the Sociology Department in 1971, and immediately recruited a male "sociologist of education" to teach the courses then being taught by Cohen. *Id.* ¶ 54. Dr. Berger "has [since] attempted to shift the locus of plaintiff's joint appointment" to a department other than Sociology, "leaving plaintiff without a firm departmental base for purposes of promotions and advancement." *Id.* Cohen has also been denied such benefits as the assignment of a graduate research assistant and compliance with her requests to teach courses in her field of expertise. *Id.* ¶ 57. Finally, her salary is lower than that received by "male colleagues of similar rank, length of service, duties and standing in the Sociology Department." *Id.* ¶ 56. Cohen filed a charge of discrimination with the Equal Employment Opportunity Commission on June 27, 1974. *Id.* ¶ 58.

With respect to the unnamed class members, the amended complaint alleges:

"14. In regard to promotion, tenure, salary and teaching assignment, defendant has discriminated and continues to discriminate on the basis of sex against women in faculty, administrative and professional positions throughout the University.

15. Women faculty members and administrative and professional personnel in the University generally receive less pay than male faculty members and administrative and professional personnel with [equivalent] training, scholastic qualifications and time in rank.

16. Women faculty members and administrative and professional personnel are appointed to fewer University governing committees than male faculty members and administrative and professional personnel.

17. Women faculty members and administrative and professional personnel [comprise] an inordinately small percentage of the total university faculty, administrative and professional positions.

18. There are adequate numbers of available qualified women to correct such disparities.

19. The disparity in salary, promotion and committee assignments afforded women faculty members and administrative and professional personnel, along with the concentration of women faculty administrators and professionals in lower non-tenured professorial ranks, is the result of a continuing pattern of discrimination on the basis of sex by the defendant.

20. Defendant consistently paid its male employees the salaries prevailing in the area for persons in comparable positions but consistently paid its female employees salaries lower than those prevailing in the Philadelphia Metropolitan area for persons in comparable positions."

■ In describing the class they seek to represent, plaintiffs simply state that it is made up of two subclasses:

"(1) All female faculty members, administrative and professional personnel of Temple University employed at all times encompassed by the statutes herein relied upon.

(2) All female applicants for faculty, administrative and professional positions both past and present at Temple University at all times encompassed by the statutes herein relied upon."

Amended Complaint (Document No. 40) ¶ 10(a).

This definition of the proposed class is needlessly vague in that it fails to give the specific dates that *are* "encompassed by" the two statutes relied on here. I shall address this deficiency later in this opinion, but I see no reason to defer consideration of the motion for class action certification. None of Temple's objections to the proposed class are based on any particular cut-off dates for any of the class members' claims. Instead, Temple opposes certification on the grounds that (1) this is not a proper case for applying the "across-the-board" approach to antidiscrimination class actions, and (2) plaintiffs have not satisfied the Rule 23(a) requirements of commonality, typicality, and adequacy of representation.[1] I shall proceed to consider those objections.

■ Initially, Temple argues that the "across-the-board" approach to antidiscrimination class actions should not be followed here. *See generally Wajda v. Penn Mut. Life Ins. Co.,* 80 F.R.D. 303, 307–09 (E.D.Pa. 1978). Temple contends that this approach is applicable only where the plaintiffs can identify a single specific, allegedly discriminatory, policy or practice of the employer

---

1. Temple also argues that plaintiffs' failure to specify which positions they view as "administrative" or "professional" positions simply precludes certification of a class defined in part by those terms. I cannot agree. Although plaintiffs' counsel have not addressed this issue, I assume that the class definition was meant to incorporate the terms "administrative" and "professional" as they are used in the Fair Labor Standards Act, 29 U.S.C. § 213(a)(1) (1976). If my assumption is correct, then the regulations promulgated by the Secretary of Labor, which help to define those terms, should also help to resolve any difficulties that arise in determining whether a particular position at Temple is an "administrative" or "professional" position. *See* 29 C.F.R. §§ 541.0 to .315 (1978).

that is uniformly applicable to all similarly situated employees. I recognize, of course, that certain decisions within this district support Temple's position. *See, e. g., Webb v. Westinghouse Elec. Corp.,* 78 F.R.D. 645, 650 (E.D.Pa.1978) (Huyett, J.); *Hauck v. Xerox Corp.,* 78 F.R.D. 375, 378 (E.D.Pa. 1978) (Troutman, J.). In my view, however, the "across-the-board" approach was developed in order to further the remedial objectives of Title VII, and it should not be restricted to the "easy" case that involves a single specific policy or practice. Thus, I recently followed the "across-the-board" approach in *Wajda v. Penn Mut. Life Ins. Co.,* 80 F.R.D. 303 (E.D.Pa.1978), where the named plaintiff alleged pervasive gender-based discrimination throughout the twenty-one departments of Penn Mutual's home office in Philadelphia. The complaint in that case enumerated thirty-four allegedly discriminatory policies, 80 F.R.D. at 306–07, in areas such as recruitment, hiring, placement, promotions, salary, and merit raises. *Id.* Under the approach that Temple advocates, of course, *Wajda* should not be maintained as a class action. Temple would confine the "across-the-board" approach to cases involving narrow, specific practices, such as a company rule that women may not hold particular executive or managerial positions. As I have already noted the policies supporting the "across-the-board" approach certainly do not call for this limitation. Moreover, in the "easy" case that involves only a single specific practice, the "across-the-board" approach would often be superfluous as the proposed class would often satisfy the Rule 23(a) prerequisites even if they were strictly interpreted. In short, I find Temple's argument unpersuasive. Plaintiffs here may invoke the "across-the-board" approach in their efforts to maintain this lawsuit as a class action, even though they challenge a wide assortment of employment policies and practices.

Temple also advances a related argument in opposition to "across-the-board" certification here. As I understand its position, Temple contends that this approach is inappropriate because personnel decisions affecting the members of the proposed class (1) are made on a highly decentralized basis, and (2) in the case of faculty members, are often made by other faculty members. As for the first point, I ruled in *Wajda* that although decentralized authority over personnel decisions might complicate proof of the class members' claims, the named plaintiff could invoke the "across-the-board" approach where the proposed class spanned twenty-one largely autonomous departments within a large insurance company. 80 F.R.D. at 309–10. I shall adhere to that position in this case, where control over personnel decisions appears to be even more widely disseminated. As for the second point, which relates only to faculty members, Temple argues as follows:

"*Wajda* does not address certification in the context of a university where authority to make personnel decisions is vested in the faculty, whose decisions are made on the basis of collegial evaluation and which the board of trustees and principal officers are not permitted to reverse except for compelling reasons."

Defendant's Memorandum in Opposition (Document No. 43) at 35 n. 12.

So far as I can tell from the brief, Temple views collegial faculty decisionmaking as further evidence that this case does not involve any narrow, uniform policies that affect female faculty members. This is simply a rehash of the argument that I noted (and rejected) earlier. The "across-the-board" approach, in my view, may be applied where the named plaintiffs allege pervasive discrimination, even though that discrimination does not manifest itself in specific policies that apply uniformly to all employees similarly situated. Thus, I conclude that plaintiffs here may invoke the "across-the-board" approach.

That conclusion does not, however, end the inquiry. As I noted in *Wajda,* "[t]he 'across-the-board' approach does not relieve a district court of its obligation to determine whether certification is appropriate in any particular case." 80 F.R.D. at 309. I shall therefore consider Temple's remaining objections to certification.

■ A number of Temple's contentions center on the question whether plaintiffs are adequate representatives of the absent class members. "Adequate representation, in addition to being required by Rule [23(a)(4)], is constitutionally mandated if absent class members are to be bound by the judgment concerning the class claims." *Scott v. University of Delaware,* 601 F.2d 76, 84 (3d Cir. 1979) (citation omitted). *See also* Comment, *The Importance of Being Adequate: Due Process Requirements in Class Actions Under Federal Rule 23,* 123 U.Pa.L.Rev. 1217, 1224–29 (1975).

■ Initially, Temple argues that the adequacy requirement of Rule 23(a)(4) is not met unless the court is satisfied "that the representatives and their attorneys will competently, responsibly and vigorously prosecute the suit." *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3d Cir. 1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 891 (1978). I cannot make such a finding here, according to Temple, because plaintiffs and their attorneys "have done almost nothing since they filed their complaint" in 1975. Defendant's Memorandum in Opposition (Document No. 43) at 25. In this connection, Temple stresses that plaintiffs have conducted relatively little discovery bearing on the merits of their claims. *Id.* 26–27. Although I recognize that this case has proceeded at a deplorably slow pace, plaintiffs' attorneys have not alone been responsible for the delays. In any event, it would serve little purposes to recount the sorry procedural history of this litigation and to then apportion the blame for each particular problem among plaintiffs' counsel, Temple's counsel, and the court. I am not persuaded at this juncture that plaintiffs will necessarily prove to be inadequate representatives. Once this case is certified as a class action, of course, it *will* be their duty to prosecute it competently[2] and vigorously. If at any time it appears that they are shirking this responsibility, I will not hesitate to consider decertification to protect the interests of absent class members. But the unfortunate prior history of this case does not warrant denial of certification in the first instance.

■ Temple also challenges plaintiffs' adequacy as representatives on several narrower grounds. First of all, Temple argues that Molthan and Torrance, who are both *former* employees, may not represent a class that includes *present* employees. This position is plainly untenable. The Court of Appeals for the Third Circuit has expressly stated that "a former employee, who is not entitled to reinstatement, may still be an adequate representative of a class of past and present employees alleging discriminatory employment practices." *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir.) (footnote omitted), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). What is important is that the would-be representatives have no interests that are antagonistic to the interests of the class members. *See Scott v. University of Delaware,* 601 F.2d 76, 84 n. 17, 86 n. 21 (3d Cir. 1979); *Wetzel v. Liberty Mut. Ins. Co., supra,* 508 F.2d at 247–48. Here, Temple has not suggested the existence of any antagonistic interests, and my own review of the record discloses no reason to believe that Molthan and Torrance, as former employees, have any interests that are antagonistic to those of any class members who are presently employed at Temple. Accord-

2. Although the merits of this case are not presently before me, it may not be premature to make an observation regarding the use (and abuse) of statistical evidence. Plaintiffs, in one of their briefs on the certification issue, present a table that simply shows the *number* of male and female faculty members at each of Temple's fifteen schools and colleges in the fall of 1977. They state that this table "speaks for itself regarding practices of sexual discrimination in the class plaintiffs seek to represent." Plaintiffs' Supplemental Memorandum (Docu-

ment No. 41) at 9. It is, of course, erroneous to infer discrimination from raw data such as this, particularly in the absence of any information regarding the make-up (by gender) of the relevant labor market and the applicant pool available to Temple. *See Hazelwood School Dist. v. United States,* 433 U.S. 299, 306–13 & n. 13, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977). If plaintiffs are to shoulder their responsibility in prosecuting the class members' claims, any statistical evidence proffered at trial should be the sort that can withstand rigorous analysis.

ingly, I reject this challenge to plaintiffs' adequacy as representatives.

██ Temple also argues that plaintiff Cohen is an inadequate representative of other faculty members, due to the "peculiar nature of her claims." Defendant's Memorandum in Opposition (Document No. 43) at 29–30. Temple describes Cohen's situation as follows:

> "While urging certification of an 'across-the-board' class of faculty women that would ignore differences in departmental decision-making, Dr. Cohen simultaneously contends that the Sociology Department, but not the Foundations of Education Department, has discriminated against her on the basis of sex. In Dr. Cohen's view, the Department of Sociology has discriminatorily denied her promotion to the rank of Full Professor, but the Foundations of Education Department and the College of Education have not. She contends that she is underpaid with respect to her male colleagues in the Sociology Department, but not in the Foundations of Education Department. While she complains of the actions of the chairman of the Sociology Department, she makes no similar complaints about the Foundations of Education Department, where she served as chairperson for a time.
> . . . In stating her case, she relies on the non-discriminatory treatment accorded her in the Foundations of Education Department and the College of Education to buttress her claim of what she perceives to be discriminatory decisions made within the Sociology Department.
> If Dr. Cohen's claims are, as she alleges, 'typical' of the claims of faculty women, then no University-wide policy of sex discrimination exists. If her claims are 'atypical', or if the nature of her claims places her in a position where her interests at trial will be antagonistic to the interests of the women she seeks to represent (i. e., women employed as faculty members in the College of Education), she has failed to meet the prerequisites of Rule 23(a)."
> Id. 30–31.

This argument is unpersuasive. First of all, I am puzzled by Temple's characterization of Cohen's claim. According to Temple, Cohen "relies on the non-discriminatory treatment accorded her in the Foundations of Education Department . . . to buttress her claims of . . . discriminatory decisions made within the Sociology Department." Id. 30. After examining the amended complaint and the transcript of Cohen's deposition, I can only conclude that this statement is unsupported. Moreover, even if Cohen's legal claim were somehow based on the premise that women faculty members in the Foundations of Education Department are treated equitably, that would not make Cohen an inadequate representative of female faculty members. Temple suggests that it would, because Cohen's interests would clash with those of female faculty members in the Foundations of Education Department who might contend that they experienced discrimination within that department. However, the potential for such a conflict appears remote. Cohen stated at her deposition (taken in April of 1977) that "[t]here are no other women faculty members in the Foundations of Education Department." Cohen Deposition I (Exhibit to Document No. 43) at 47 (emphasis supplied). Nothing in the record controverts this statement. Thus, I see little cause for concern along the lines suggested by Temple. Cohen may represent a class of female faculty members.

██ Temple also argues that the three named plaintiffs, all of whom were hired by Temple, may not represent a class that includes disappointed applicants. A recent decision by the Court of Appeals for the Third Circuit sustains Temple's position. In *Scott v. University of Delaware*, 601 F.2d 76 (3d Cir. 1979), the court of appeals held that a black faculty member could not adequately represent a subclass of black applicants who had sought faculty positions. The court relied heavily on an explicit conflict of interests between the named plaintiff and the class of disappointed applicants. Id. at 85–86. No such conflict is present in this case. But the *Scott* court also based its

ruling on *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), where the Supreme Court held that a named· plaintiff who clearly had not been injured by the company's allegedly discriminatory practices could not adequately represent a class of employees who allegedly had been injured. The court of appeals, in applying *Rodriguez*, stated: "Since [Scott] was not· injured by any alleged discriminatory hiring practices, it is doubtful after *East Texas Motor Freight* that he can lead a class challenging the University's hiring practices." *Scott v. University of Delaware, supra*, at 87 (footnote omitted). That observation would appear to govern this case as well. As I understand it, none of the three named plaintiffs contends that she was injured in any way by Temple's hiring practices. Thus, under *Scott* and *Rodriguez*, they may not represent disappointed applicants who may have been injured by those practices. *But cf. Scott v. University of Delaware, supra*, at 93 (Adams, J., concurring) (*Scott* does not hold "that in general a person allegedly discriminated against with respect to promotion may not represent a class including individuals who were aggrieved by the employer's hiring practices").

■■■ Now that I have resolved Temple's objections to the proposed class, I shall review the requirements of Rule 23 as they apply to this action. Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Plaintiffs state in their brief that the size of the class here "is believed to be in the range of several hundred," Plaintiffs' Memorandum of Law (Document No. 7), and Temple concedes this point, so that the numerosity requirement is satisfied here. Rule 23(a)(2) requires that there be "questions of law or fact common to the class." In "across-the-board" actions such as this, the question whether the employer discriminated on the basis of sex against its employees is a question common to all class members, irrespective of factual differences in their individual circumstances, and this single common question satisfies the requirement of Rule 23(a)(2). *See Wajda v. Penn Mutual Life Ins. Co.*, 80 F.R.D. 303, 307 (E.D.Pa.1978) (collecting authorities). Rule 23(a)(3) requires that "the claims . . of the representative parties [be] typical of the claims . . . of the class." Although the meaning of the typicality requirement is obscure, the courts have generally been lenient with plaintiffs challenging "across-the-board" discrimination. *Wajda v. Penn Mutual Life Ins. Co., supra*, 80 F.R.D. at 307–08. I believe that the claims of plaintiffs Molthan, Torrance, and Cohen are typical of the discrimination claims of the absent class members. Finally, Rule 23(a)(4) requires adequate protection of the class members' interests. Plaintiffs' counsel must be qualified and experienced, and the plaintiffs themselves must have no interests that are antagonistic to the interests of any class members. *See, e. g., Scott v. University of Delaware, supra*, at 84 n. 17, 86. I have already discussed (and rejected) Temple's contentions that the requirements of Rule 23(a)(4) are not satisfied here.

■■■ Plaintiffs must also satisfy one of the four subdivisions of Rule 23(b). They seek to maintain this action under Rule 23(b)(2), which is applicable where "the party opposing the class has acted or refused to act on ground generally applicable·to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." As I noted earlier, Temple opposes (b)(2) certification here because plaintiffs are not attacking a specific, University-wide policy that applies to all female employees. For the reasons already given, that argument is unavailing. Apart from that contention, Temple has not opposed certification under (b)(2).

Generally, "an action involving alleged class-based discrimination is a paradigm (b)(2) class action." *Wajda v. Penn Mutual Life Ins. Co., supra*, 80 F.R.D. at 314. I therefore conclude that this action may be maintained under Rule 23(b)(2) insofar as

plaintiffs seek injunctive and declaratory relief under Title VII. The amended complaint also prays for an award of back pay. At this time, however, I am not convinced that the absent class members' claims for back pay could be efficiently resolved within the framework of this class action. Given the great diversity of faculty, administrative, and professional positions that fall within the class definition, I suspect that the litigation of these claims for back pay might amount to nothing more than a lengthy series of mini-trials. Accordingly, I shall reserve decision on whether to certify this aspect of Count I until the record demonstrates more clearly whether such a course of action would be appropriate.

With respect to Count II of the amended complaint, on the other hand, I am fully persuaded that (b)(2) certification would be inappropriate. Count II is based upon 42 U.S.C. § 1983 (1976), and although the amended complaint does not outline any particular legal theory, plaintiffs apparently contend that Temple, acting under color of state law, see Isaacs v. Board of Trustees of Temple University, 385 F.Supp. 473 (E.D. Pa.1974), deprived them of rights secured to them by the equal protection clause. This equal protection claim differs significantly from plaintiffs' Title VII claim. First, as plaintiffs' counsel noted at oral argument, section 1983 affords plaintiffs a longer limitations period than does Title VII. Second, plaintiffs are entitled to a jury trial on their section 1983 claim, whereas "the courts have consistently held that neither party [to a Title VII action] has a right to a jury trial." Great American Federal Savings & Loan Association v. Novotny, —— U.S. ——, ——, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979) (footnote omitted). Third, plaintiffs will have to demonstrate that Temple acted with a "discriminatory intent or purpose" in order to make out a violation of the equal protection clause, Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); see Personnel Administrator v. Feeney, —— U.S. ——, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979), whereas their Title VII claim could rest on proof of disparate impact alone. See, e. g., International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335–36 n. 16, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Fourth, the amended complaint prays for both compensatory and punitive damages under section 1983, neither of which is available under Title VII, Scott v. University of Delaware, supra, at 81–82 n. 8, and neither of which fits comfortably within a (b)(2) class action. See Santiago v. City of Philadelphia, 72 F.R.D. 619, 626–29 (E.D.Pa.1976) (Lord, C. J.). These four differences, taken together, counsel against trying both Count I and Count II on a classwide basis in a single civil action. I shall therefore deny plaintiffs' motion for certification with respect to Count II.

Finally, plaintiffs' definition of the proposed class requires some comment. As I noted earlier, plaintiffs initially divided the proposed class into two subclasses, one for Temple employees and one for disappointed applicants. I have already ruled that plaintiffs may not represent a class that includes disappointed applicants. Thus, what was formerly the employee subclass now constitutes the entire class. Plaintiffs have defined that class as follows: "All female faculty members, administrative and professional personnel of Temple University employed at all times encompassed by the statutes herein relied upon." Amended Complaint ¶ 10(a)(1). It would be preferable, in my view, to specify at this stage in the proceedings the actual cut-off date for determining which Temple employees are members of the class. To begin with, the effective date of Title VII with respect to educational institutions was March 24, 1972. See Equal Employment Opportunity Act of 1972, Pub.L.No.92–261, § 14, 86 Stat. 103. Of the three named plaintiffs, Torrance was the first to file a complaint of discrimination with the EEOC; she did so on July 7, 1972. Torrance's filing tolled the Title VII statute of limitations for all the class members, but they may not use that statute of limitations to assert any claims that pre-date the effective date of the 1972 amendments to Title VII. Thus,

as counsel agreed at oral argument, the class should only include all Temple employees who could have filed timely complaints with the EEOC on or after March 24, 1972.

For the reasons set forth in this opinion, then, I conclude that the major aspects of Count I may be maintained as a class action, but that the class may not include disappointed applicants. The class shall consist of all female faculty members, administrative personnel, and professional personnel of Temple University who could have filed timely complaints of discrimination with the EEOC on or after March 24, 1972. I shall enter an appropriate order.